Chester Erle VAN METER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1510.

Court of Appeals of Alaska.

Oct. 9, 1987.

Christine S. Schleuss, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Chester Erle Van Meter was tried without a jury and convicted of sexual abuse of a minor in the second degree. *See* AS 11.41.420. Superior Court Judge Charles K. Cranston sentenced Van Meter to four years with all but nine months suspended. Van Meter appeals, contending that the trial court erred in denying a motion to hold an evidentiary hearing on the admissibility of polygraph evidence, in admitting an out-of-court videotaped statement made by the victim, in incorrectly determining the applicable culpable mental state for the offense, and in admitting evidence of emotional trauma suffered by the victim following the offense. We affirm.

The charges in this case stemmed from an incident in which Van Meter placed his hand inside a six-year-old girl's underpants. Van Meter, a seventy-nine-year-old man, was staying with the R. family while he vacationed in Alaska. On September 14, 1985, Van Meter played a game he called "gallopy-trot" with the victim, A.R. Van Meter would bounce A.R. on his knees while reciting a rhyme and then drop the child to the floor. Then he would pick her up and tickle her. Ms. R., who was present in another room, saw some of the horseplay and did not like it because it looked rough. However, she did not stop the game.

The following day A.R.'s sister told her mother that A.R. said Van Meter touched her "private parts." Ms. R. asked A.R. if it was true. A.R. responded that Van Meter had hurt her. A subsequent medical examination indicated that A.R. had abnormal scratches and redness in and around her vaginal area. The injuries were consistent with A.R. scratching herself or being scratched with some kind of semi-sharp object such as a fingernail, and with the insertion of an adult finger into the genitals.

The police were notified of A.R.'s allegation. On the evening of September 15 and the morning of September 16, 1985, Alaska State Trooper Wayne Von Clasen interrogated Van Meter. Van Meter was indicted for sexual abuse of a minor in the first degree on September 19, 1985.

## Polygraph Evidence

■ Prior to trial, Van Meter was released on bail and returned to his residence in Fayetteville, Arkansas. He returned to Alaska a few days before his trial date of February 6, 1986. Van Meter took a polygraph examination in Anchorage on February 1, 1986.

Van Meter moved for admission of the polygraph examination results. On the day before trial, Judge Cranston presided over a hearing on the motion. Van Meter requested an evidentiary hearing on the admissibility of the polygraph results. He made the following offer of proof as to what he would try to establish:

I would think, [it] would be the most expeditious [and] efficient for me to bear the burden of proof to show, through experimentation and/or other information or evidence, that the results are reliable, that the examiner is qualified and that he is interpreting the tests in this case properly. I would think that if that is found by the Court and the Court then would be able to render an opinion as to whether or not the results are sufficiently reliable to be admitted in the court.

. . . .

I expect that I would be calling just one witness, that would be Mr. Slisz[1] from Anchorage.

Judge Cranston declined Van Meter's request for an evidentiary hearing and ruled the polygraph evidence inadmissible.

At the close of his trial testimony, Van Meter renewed his request for admission of the polygraph evidence and for an evidentiary hearing on the issue. Judge Cranston again rejected Van Meter's requests. On appeal, Van Meter contends that the trial court erred in excluding the polygraph evidence without allowing an evidentiary hearing to establish its reliability.

Van Meter acknowledges that in *Pulakis v. State*, 476 P.2d 474 (Alaska 1970), the Alaska Supreme Court found insufficient evidence of reliability to warrant the admission of polygraph examination results at

trial. Van Meter notes, however, that the court left the door open for future re-examination of its holding. The court stated:

The central problem regarding admissibility is not that polygraph evidence has proved unreliable, but that polygraph proponents have not yet developed persuasive data demonstrating its reliability. Little worthwhile experimentation has been done to determine the reliability of polygraph evidence. This is not to say that the worth of polygraph evidence cannot ever be proved to the satisfaction of this court.

476 P.2d at 479. The court further stated, "Judicial acceptance of polygraph tests must await the results of more persuasive experimental proof of reliability." *Id.* See also *Troyer v. State*, 614 P.2d 313, 319 n. 12 (Alaska 1980).

Under *Pulakis* and *Troyer*, Van Meter was obligated to make at least a colorable showing that, since the supreme court's decision in *Pulakis*, additional experimental evidence has come to light establishing that the polygraph technique is a scientifically reliable process:

It has been suggested that recent tests indicate the polygraph technique is a reliable process. *See Tarlow, Admissibility of Polygraph Evidence in 1975: An Aid in Determining Credibility in a Perjury-Plagued System*, 26 Hastings L.J. 917, 927–34 (1975). Bodine, *Polygraphs Take the Stand*, The National Law Journal, April 14, 1980, at 1, col. 1. Without sufficient foundational evidence, we are unable to make an informed decision concerning the reliability of the technique today. Here, the defendants failed to provide an evidentiary basis to establish the reliability of the polygraph technique.

*Troyer*, 614 P.2d at 319 n. 12. Despite his request for an evidentiary hearing, Van Meter never offered to make such a showing.

The only specific offer of proof made by Van Meter in requesting an evidentiary

1. Richard W. Slisz is the polygraph examiner who administered the examination to Van Meter on February 1, 1986.

hearing was in connection with his motion for a new trial. Van Meter appended to his motion the results of his exam, as interpreted by Richard Slisz of Alaska Polygraph Service, and Mr. Slisz's resume. While this may be construed as an offer of proof aimed at establishing Slisz's qualifications as an examiner and the accuracy of the result of the examination in this case, the offer has utterly no bearing on the broader, preliminary issue that must be addressed under *Pulakis* and *Troyer:* the general reliability of polygraph testing as a scientific process.

Nor does Van Meter's argument on appeal provide any indication that he would be prepared to address this issue at an evidentiary hearing. In the absence of such an offer, we conclude that Van Meter's request for an evidentiary hearing on the admissibility of the polygraph evidence was properly denied and that the proposed polygraph evidence was correctly deemed inadmissible under *Pulakis* and *Troyer.*[2]

### *Videotaped Statement*

■ Van Meter argues that it was reversible error for the trial court to admit the videotaped statement made by A.R. to a psychologist two days after the assault. After A.R. testified, the trial court admitted the videotape as a prior consistent statement. *See* Alaska Rule of Evidence 801(d)(1)(B).[3] The question whether A.R.'s videotaped statement was admissible is controlled by our decision in *Nitz v. State,* 720 P.2d 55 (Alaska App.1986). In *Nitz* we stated:

Rule 801(d)(1)(B) is commonly construed to require that three conditions be

met before a prior consistent statement may be admitted as non-hearsay. First, the prior statement must be consistent with testimony given by the declarant at trial. Second, the statement must be admitted to rebut an express or implied charge of recent fabrication or improper influence or motive. Third, the prior statement must be shown to have been made before the asserted improper influence or motive arose. (citations omitted)

720 P.2d at 64.

Van Meter argues that A.R.'s testimony was inconsistent with her trial testimony, that there was no express or implied charge of recent fabrication, and that a motive to lie existed before A.R. made her statement.

The admissibility of evidence is largely within the trial court's discretion and its rulings will not be overturned in absence of an abuse of discretion. *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980); *Eben v. State,* 599 P.2d 700, 710 (Alaska 1979). In the present case, the discrepancies between A.R.'s videotaped statement and her trial testimony concerned the clothing she was wearing when she was assaulted, the physical location of one of the assaults, and her ability to use an anatomically correct doll to indicate Van Meter's method of assault. A.R.'s basic description of the assault, however, was not inconsistent. In the videotaped statement and at trial, A.R. stated that she was assaulted while playing the "horsey" game, that Van Meter used his hand for the assault, and that he reached into A.R.'s clothing and hurt her. Under the circumstances, it was well within the ambit of the trial judge's broad discretion

---

**2.** We thus uphold the trial court's denial of Van Meter's motion for an evidentiary hearing for reasons other than those stated by the court below. *Rutherford v. State,* 605 P.2d 16, 21 n. 12 (Alaska 1979); *Kizzire v. State,* 715 P.2d 272, 273 n. 1 (Alaska App.1986). *See also Pistro v. State,* 590 P.2d 884, 888 n. 13 (Alaska 1979). We affirm on the narrow ground that Van Meter has not shown that he was prepared to provide an evidentiary basis to establish the reliability of the polygraph process. We need not determine whether Judge Cranston was correct in finding that Van Meter's motion was untimely or in construing this court's decision

in *Leonard v. State,* 655 P.2d 766 (Alaska App. 1982), to foreclose an evidentiary hearing.

**3.** A.R.E. 801(d)(1)(B) provides:

(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if

(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and the statement is

. . . . .

(B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

to determine that the videotaped statement was a prior consistent statement.[4]

The second condition of admissibility under A.R.E. 801(d)(1)(B) and *Nitz*—a claim of fabrication or improper influence or motive—was clearly satisfied in this case by Van Meter's assertions, in both his opening statement and his cross-examination of A.R., that A.R.'s trial testimony was the result of fabrication. In his opening statement Van Meter contended that A.R.'s accounts of the sexual abuse were not consistent. On cross-examination, Van Meter implied that A.R.'s testimony had been influenced by her contacts with the police and the prosecuting attorney. In arguing the admissibility of the videotaped statement at trial, Van Meter's counsel conceded that he was "obviously" suggesting inconsistencies and fabrication.

The third condition of admissibility under A.R.E. 801(d)(1)(B) is that an out-of-court statement be recent—in other words, that it be made before a motive to fabricate arises. However, in *Nitz* this court declined to read A.R.E. 801(d)(1)(B) to require automatic exclusion of prior consistent statements made after a motive to testify falsely has arisen. Under *Nitz*, admission of such evidence becomes a question of relevance for determination on a case-by-case basis. *Nitz*, 720 P.2d at 67–68. In any event, in the present case Van Meter's attack on A.R.'s credibility implied that she had been influenced to incriminate Van Meter in recent conversations with the police and the prosecution. Even apart from our holding in *Nitz*, this implication satisfied the recency requirement of A.R.E. 801(d)(1)(B).

We conclude that A.R.'s videotaped statement was properly admitted as a prior consistent statement under A.R.E. 801(d)(1)(B).

---

4. Even if Van Meter could make a persuasive argument that the prior statement was not consistent, the evidence would have been admissible as a prior inconsistent statement. In this regard, A.R.E. 801(d)(1)(A) provides:

(d) *Statements Which Are Not Hearsay.* A statement is not hearsay if

*Culpable Mental State*

■ Van Meter argues that the trial court erred in failing to apply the correct culpable mental state for the offense of sexual abuse in the second degree. The trial court concluded that Van Meter had knowingly touched A.R. in a sexual manner. In his conclusions of law Judge Cranston wrote:

The state has proved beyond a reasonable doubt that:

a. On or about September 14, 1985, at or near Seward, Third Judicial District, State of Alaska;

b. That defendant at that time and place was sixteen (16) years of age or older;

c. *That defendant* at that time and place *knowingly engaged in sexual contact* with A.R.;

d. A.R. at that time and place was under thirteen (13) years of age.

(Emphasis added.)

Based on these conclusions, Judge Cranston found Van Meter guilty of sexual abuse of a minor in the second degree: engaging in sexual contact with a child under thirteen. AS 11.41.436(a)(2). "Sexual contact," as defined in the 1984 amendment to AS 11.81.900(b)(52), means:

(A) the defendant's

(i) knowingly touching, directly or through clothing, the victim's genitals, anus, or female breast; or

(ii) knowingly causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast;

(B) but "sexual contact" does not include acts

(i) that may reasonably be construed to be normal caretaker responsibilities for a child, interactions with a child, or affection for a child....

(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and the statement is

. . . . .

(A) inconsistent with his testimony....

(ii) performed for the purpose of administering a recognized and lawful form of treatment that is reasonably adapted to promoting the physical or mental health of the person being treated....[5]

Van Meter argues that Judge Cranston's finding of a knowing touching is not enough to satisfy constitutional due process requirements and that an additional mental element is required for conviction. Van Meter contends that the definition of "sexual contact" should be construed to require proof that the defendant "acted with reckless disregard for the unjustified nature of his conduct." *Flink v. State*, 683 P.2d 725, 741 (Alaska App.1984) (Bryner, Chief Judge, concurring and dissenting).

Van Meter's argument is not supported by the commentary to the 1984 amendment, which explained the legislative intent in amending the definition of "sexual contact":

In passing SCS for House Bill 299 (Judiciary), an Act relating to the definition of "sexual contact" and "sexual penetration", the legislature intends to change the result reached by the Alaska Court of Appeals in *Flink v. State*. In the *Flink* case, the court ruled that the legislature intended that crimes involving sexual contact be specific intent crimes. In adopting SCSHB 299 (Judiciary), *the legislature intends to reaffirm that crimes involving sexual contact and penetration are general intent crimes.* The amendments contained in this bill are intended to remove any perceived ambiguity in existing law.

1984 Senate Journal 3387 (citation omitted) (emphasis added).

Nevertheless, the actual language of the 1984 amendment is arguably ambiguous. Subparagraph (A) of the statutory definition clearly specifies the mental state that governs the defendant's conduct: the conduct must be "knowing." [6] Less clear, however, is whether any culpable mental state should attach to the circumstances described in subparagraph (B). This section excludes from the definition of "sexual contact" touchings that fall within the definition of subparagraph (A) when those touchings occur under circumstances deemed by the legislature to be justified. Although the language of subparagraph (B) does not provide for it, Van Meter urges that a culpable mental state should apply separately to the circumstances described in the subparagraph, so as to require not only that the defendant engage in a knowing touching of the type described in subparagraph (A), but also that the defendant be aware that the touching is not justified under subsection (B).

We decline to interpret the statute in this manner, since such an interpretation so obviously conflicts with the intent expressed by the legislature in adopting the current definition of "sexual contact." In our view, a more reasonable reading of the statute would attach no separate culpable mental state requirement to the circumstances described in subparagraph (B).

Van Meter asserts, however, that unless a separate culpable mental state requirement is attached to the circumstances described in subparagraph (B), the current statutory definition of sexual contact would suffer from the same constitutional problems that were of concern to this court in

---

**5.** Prior to amendment in 1984, "sexual contact" was defined as:

(A) the intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breast; or

(B) the defendant's intentionally causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast....

Former AS 11.81.900(b)(51).

**6.** "Knowing" is, in turn, defined in AS 11.81.900(a)(2), which provides in relevant part:

[A] person acts "knowingly" with respect to conduct or to a circumstance described by a

provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists; when knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist; a person who is unaware of conduct or a circumstance of which the person would have been aware had that person not been intoxicated acts knowingly with respect to that conduct or circumstance....

*Flink.* There, we found difficulty with the former definition of "sexual contact":

> Although the statutory definition of sexual contact requires knowing conduct and therefore includes an element of intent, that element does not help to differentiate between the wide variety of innocent touchings and harmful touchings potentially covered by the broad definition of sexual contact. Thus, the intent element included in the statute is not a criminal intent and does ᵃᵒt satisfy the requirement of *mens rea*—that is, a culpable mental state, or an awareness of wrongdoing.... An awareness of wrongdoing might be unnecessary if the conduct prohibited by the statute was itself necessarily harmful—*malum in se.* However, the range of conduct prohibited is so broad that the offense is *malum prohibitum,* and an awareness of wrongdoing must be included as a necessary element.

*Flink,* 683 P.2d at 739 (citations omitted) (Bryner, C.J., concurring and dissenting).

In contrast, the amended statutory definition eliminates these problems: in subparagraph (A), the amended definition provides for a specific mental state governing conduct; in subparagraph (B), the amended definition limits the circumstances in which otherwise impermissible touchings may be proscribed. Thus, the legislature has responded to the problem of differentiating between a "wide variety of innocent touchings and harmful touchings," by including in AS 11.81.900(b)(52)(B) limiting language that broadly excludes from the definition of "sexual contact" acts that "may reasonably be construed to be normal caretaker responsibilities for a child, interactions with a child, or affection for a child," as well as acts "performed for the purpose of administering recognized and lawful forms of treatment...."

Nor can the amended definition be construed to result in an inappropriate shift to the defendant of the burden of proof with respect to justification. In its commentary, the legislature stated:

> The legislature intends that the exceptions listed in revised AS 11.81.- 900(b)(52)(B) and AS 118.81.900(b)(53)(B) shall *not* be part of the prosecution's pleading and proof in its case-in-chief. Rather, these exceptions must be raised by the defendant. If raised, the prosecution bears the burden of disproving the exception beyond a reasonable doubt. The legislature intends that the exceptions operate as other defenses provided for in the criminal code. See AS 11.81.- 900(b)(15).

Commentary to AS 11.81.900(b)(52) and (53), 1984 Senate Journal at 3388 (May 30, 1984). Thus, when "some evidence" is presented to indicate that a touching was justified under subparagraph (B), the state must prove beyond a reasonable doubt the absence of justification. *See* AS 11.81.- 900(b)(15).

In short, under the current statutory definition of "sexual contact," the offense of sexual abuse of a minor in the second degree may properly be established by evidence proving knowing conduct within the scope of AS 11.81.900(b)(52)(A). No secondary culpable mental state need be established with respect to surrounding circumstances. If, however, some evidence of justification is advanced in the record, the state must bear the additional burden of establishing that the defendant's conduct did not fall within the exclusions of AS 11.81.900(b)(52)(B).

In the present case, we believe that the standard applied by Judge Cranston was compatible with that adopted by the legislature. In his findings of fact Judge Cranston stated that the evidence showed beyond a reasonable doubt that while playing "gallopy-trot" or during tickling occurring as part of that game, Van Meter placed his hand inside A.R.'s underwear, knowingly causing contact between his hand or fingers and A.R.'s genitals. Judge Cranston further found that the nature of the physical trauma to A.R. showed beyond a reasonable doubt that Van Meter knew that his conduct involved sexual contact. These findings clearly establish that, in Judge Cranston's view, Van Meter's contact with A.R.'s vagina did not occur through the child's clothing; rather, Van Meter deliber-

ately placed his hand inside A.R.'s underwear. It is thus apparent that the judge unequivocally rejected Van Meter's defense, which was based on the theory that, as part of the "gallopy-trot" game, some casual but innocent touching technically qualifying as "sexual contact" may have occurred. We find no error.

### Victim's Mental State

 Van Meter's final argument concerns the admission of evidence of A.R.'s post-sexual-abuse trauma. Over Van Meter's objection, the trial judge permitted A.R.'s mother to testify:

> MS. TURNER: After Mr. Van Meter left your home, has the child had any emotional problems?
>
> MRS. R: Yes.
>
> MS. TURNER: Could you just describe that briefly for the Court please?
>
> MRS. R: Terrible temper tantrums and nightmares screaming at night. She said that Earl was under her bed and he was going to get her. Sucking her thumb, wetting her pants, and what we call be-bopping (ph) where she sits like a—she sits on the couch and she bangs her head on the wall (indiscernible) rocking.
>
> MS. TURNER: Has the child been in therapy for those things?
>
> MRS. R: Yes ma'am.

Van Meter argues that this evidence was irrelevant and therefore inadmissible. He contends that, absent evidence of A.R.'s emotional condition prior to the sexual assault, the evidence relating to her post-assault behavior should have been excluded. This argument is frivolous in context. While the prosecution did not expressly ask when A.R. first began to display the emotional problems described in her mother's testimony, the obvious implication of the testimony is that the problems first arose after A.R.'s contact with Van Meter. Indeed, it is difficult to understand how A.R. could have awakened from nightmares, screaming that Van Meter was under her bed if the episodes had occurred prior to her meeting Van Meter. Van Meter was, of course, free on cross-examination of

A.R.'s mother to pinpoint the time frame for A.R.'s behavior. He elected not to do so.

Alaska Rule of Evidence 401 provides a broad definition of relevance: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We find that Judge Cranston did not abuse his discretion in admitting the challenged evidence as relevant. *See, e.g., Denison v. Anchorage,* 630 P.2d 1001 (Alaska App.1981); *Byrne v. State,* 654 P.2d 795 (Alaska App.1982).

The judgment of the superior court is AFFIRMED.