**Robert D. REECE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4680.**

Court of Appeals of Alaska.

Oct. 7, 1994.

Rehearing Denied Oct. 28, 1994.

Carol A. Brenckle, Kenai, G. Blair McCune, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

Robert D. Reece was convicted by a jury of sexual abuse of a minor in the first degree. He appeals, contending that the trial court erred in admitting lay opinion testimony concerning certain characteristics of child sexual abuse victims. Reece also complains that the trial court prejudiced the jury by displaying bias in favor of the victim and that the court erred in excluding exculpatory evidence and in establishing the amount of restitution to be paid by Reece as part of his sentence. We affirm.

Reece was convicted for sexually abusing L.E., the eight-year-old daughter of an acquaintance of Reece, B.W. The abuse occurred at Reece's Kenai home in July of 1991, when B.W. left L.E. in Reece's care so that B.W. could travel to Anchorage for medical tests. After spending several days with Reece, L.E. telephoned her mother (who had not yet left for Anchorage) and asked to come home, complaining that Reece had done something to her "that wasn't right." When L.E. returned home, she told B.W. that Reece had molested her by inserting his finger into her vagina and performing cunnilingus on her. A medical examination of L.E. yielded findings consistent with, but not conclusive of, recent sexual penetration. Alaska State Trooper Michael J. Gomez interviewed L.E., who reported at least five instances of sexual contact by Reece that occurred during her stay with him. The conduct described by L.E. included digital penetration, cunnilingus, and masturbation.

Gomez later interviewed Reece. Reece denied sexually abusing L.E. and suggested that L.E.'s report might have been prompted by her inadvertent exposure to an adult videotape that he had at his house during her visit. According to Reece, the tape portrayed explicit sexual acts similar to those described by L.E. Reece later gave Gomez a videotape, claiming that it was a copy of the tape to which L.E. had been exposed.

Reece was tried before a jury presided over by Superior Court Judge Jonathan H. Link. At trial, L.E.'s description of Reece's sexual abuse differed somewhat from her earlier accounts. L.E. did not recall five instances of sexual contact; although she testified that Reece had penetrated her with his finger, she was equivocal as to whether he had engaged in cunnilingus. After L.E. testified, the state called Trooper Gomez to the stand to describe his interviews with L.E. and Reece. Over Reece's objection, the court allowed Gomez to testify about the phenomenon of "minimization." Based on his experience investigating sexual abuse cases, Gomez testified that children victimized by sexual abuse "always minimize the extent of what really took place whenever they're being interviewed.... [T]hey feel so low, their esteem is so down, that they're ashamed that this happened to them, so they minimize whatever happens." According to Gomez, "it's not unusual at all for them to play down what really happened. A lot of times they don't even want to talk about it." Gomez went on to state his opinion that L.E.'s conduct was consistent with what he had seen before in his investigations. In arguing its case to the jury, the prosecution attributed the inconsistencies between L.E.'s trial testimony and her more detailed prior statements to minimization.

On appeal, Reece argues that Judge Link erred in allowing Gomez to testify about minimization and to state his opinion that L.E.'s conduct was consistent with the conduct of other sexual abuse victims. Reece maintains that this testimony amounted to impermissible "vouching" for L.E.'s credibility.

Our previous opinions have held that testimony concerning behavioral or psychological characteristics of sexual abuse victims is admissible only in limited circumstances. We have found such testimony proper when it is offered for the narrow purpose of "negat[ing] a claim or inference that the complaining witness' behavior in a given case was inconsistent with a truthful accusation of sexual abuse." *Bostic v. State,* 772 P.2d 1089, 1096 (Alaska App.1989), *rev'd on other grounds,* 805 P.2d 344 (Alaska 1991). By contrast, we have ruled such testimony inadmissible when it is used affirmatively, to establish that an alleged victim is in fact a victim—that a particular individual's claim of abuse is truth-

ful because it is in some characteristic way "consistent" with typical reports of abuse. "[Our] decisions do not permit testimony offered to prove that the complaining witness is sexually abused by showing that the complaining witness exhibits behavior similar to that exhibited by sexually abused children." *Haakenson v. State,* 760 P.2d 1030, 1036 (Alaska App.1988). *See also Cox v. State,* 805 P.2d 374, 377 (Alaska App.1991); *Nelson v. State,* 782 P.2d 290, 298 (Alaska App.1989); *Anderson v. State,* 749 P.2d 369, 373 (Alaska App.1988).

■ In the present case, the form of Gomez' testimony concerning "minimization" was arguably improper. Gomez' testimony was not confined to the limited issue of whether L.E.'s inconsistencies and minimization were incompatible with a truthful claim of abuse. Instead, the court expressly ruled that Gomez could state his affirmative view that L.E.'s conduct conformed to typical conduct for a sexual abuse victim. In keeping with the scope of the court's ruling, Gomez, after describing the phenomenon of minimization, did in fact state his opinion that L.E.'s conduct was consistent with what he had seen before in his investigations.

The danger of this testimony is its tendency to suggest, not merely that minimization is common among sexual abuse victims—or, in Gomez' words, that sexual abuse victims "always minimize the extent of what really took place"—but that it is unique to sexual abuse victims. If interpreted in this manner, Gomez' testimony would have encouraged the jury to reason that, since minimization is characteristic behavior for a sexual abuse victim, and since L.E. engaged in minimization, L.E. must have been the victim of sexual abuse, and her claim of sexual abuse was therefore probably truthful. To the extent that Gomez' testimony portrayed L.E.'s minimization of events as affirmative evidence of her truthfulness in this way, it was problematic.[1]

Indeed, Judge Link himself recognized this problem. At the conclusion of Reece's trial, when the jury began its deliberations, Judge Link evidently undertook a review of recent case law and reassessed his earlier decision allowing Gomez to testify about minimization. The judge ultimately concluded that Gomez should not have been permitted to state his opinion that L.E.'s minimization was consistent with behavior typically encountered in other sexual abuse victims. Nevertheless, upon carefully considering the circumstance of Reece's case, the judge further concluded that the error in admitting this evidence was not substantially prejudicial and did not warrant a mistrial.

■ Our review of the record convinces us that Judge Link did not abuse his discretion in determining that the prejudice to Reece was minimal. Here, as noted by the trial court, Gomez made it clear that his opinion was simply based on his experience in investigating sexual abuse cases. Gomez was not presented as an expert in the identification of sexual abuse victims and did not pretend to any such expertise. Immediately after Gomez completed his testimony on direct examination, the court gave the jury an appropriate cautionary instruction. Moreover, although Gomez testified that sexual abuse victims commonly engaged in minimization, he did not characterize minimization as a unique characteristic that made it possible to distinguish between true and false claims of abuse. To the contrary, Gomez candidly acknowledged, "I don't think there is one expert in this world that could tell whether or not a young child is telling the truth or not."

The danger of prejudice was further reduced by the manner in which the state argued Gomez' testimony to the jury. At no point did the state urge the jury to find that L.E.'s minimization was affirmative proof of her status as a victim or of the truthfulness of her claim. Instead, the state relied on the

1. As we said in *Anderson,* 749 P.2d at 373:

[W]e have never authorized expert testimony seeking to establish that a person is a member of a particular class or group, *i.e.,* battered women or sexually abused children, by showing that they exhibit behavioral characteristics common to that group.... [B]efore such testimony is admitted, the proponent should estab-

lish, in a hearing out of the presence of the jury, that the probative value of the testimony outweighs its possible prejudicial effect. *See, e.g.,* Alaska Evidence Rule 403. The supreme court has suggested that in cases such as this, compliance with A.R.E. 403 should be virtually the equivalent of compliance with the *Frye* rule.

evidence of minimization for the more limited, and proper, purpose of rebutting Reece's claim that L.E.'s inconsistent and incomplete testimony was indicative of fabrication.[2] To the extent Gomez' testimony concerning L.E.'s minimization was improper, we conclude that there is no reasonable likelihood that its admission had any appreciable effect on the jury's verdict. Accordingly, we find no reversible error. *Love v. State,* 457 P.2d 622, 631 (Alaska 1969).[3]

Reece's remaining issues require only brief mention. Reece complains that the trial court prejudiced the jury by displaying bias in favor of the victim and by commenting negatively on the case presented by the defense. However, Reece failed to object or otherwise call his complaints to the attention of the trial court. Our review of the record convinces us that there is no plain error.

Reece also complains that the trial court erred in excluding evidence of his offer to take a polygraph examination and in refusing to allow admission of the videotape he gave to Trooper Gomez. The trial court did not err in finding Reece's offer to take the polygraph to be inadmissible. *Haakenson,* 760 P.2d at 1034–35; *Leonard v. State,* 655 P.2d 766, 771 (Alaska App.1982). Nor did the court err in excluding the videotape on foundational grounds.[4]

 Finally, Reece challenges the trial court's restitution award. Our review of the record, however, convinces us that the court did not abuse its discretion in requiring Reece to reimburse B.W. for partial moving expenses. The record supports the court's conclusion that B.W.'s decision to move was prompted by the sexual abuse for which Reece was convicted and that the location B.W. chose for a new residence was reasonable. *See, e.g., State v. Brady,* 169 Ariz. 447, 819 P.2d 1033, 1034 (App.1991); *Strough v. State,* 501 So.2d 488, 490–91 (Ala.Crim.App. 1986). We are further convinced that the trial court did not abuse its discretion in ordering Reece to compensate L.E. for future costs of counseling. Although *Lawrence v. State,* 764 P.2d 318, 322 (Alaska App.1988), disapproved an award for future counseling expenses that was made in the absence of evidence firmly establishing the need for and amount of such expenses, here, L.E.'s future counseling needs and the approximate cost thereof were adequately established in the sentencing record.

The judgment is AFFIRMED.

---

2. The prosecutor argued, in relevant part:

> [L.E.'s] testimony on the stand, as you recall, was somewhat guarded because of what Trooper—the Troopers indicated that the ... reluctance of a child, sexual abuse victims, to testify, to bring this out, the minimization, the guilt that they feel. Trooper Gomez explained, during the course of his experience, his years of investigation in matters such as this, that's not something that's unusual. That's something, rather, that is probably normal, where a child as young as [L.E.] to have to do; to face up to the adults, including her relatives, including a doctor, including even a social worker and a—an Alaska State Trooper, and relate to them what had occurred.

3. Reece has separately argued that, because Gomez was not formally qualified as an expert under A.R.E. 702, Gomez should not have been allowed to state any opinion whatsoever concerning L.E.'s minimization. However, to the extent Gomez' testimony was used for the limited purpose of rebutting the negative inference of fabrication relied on by Reece, Gomez' experience with sexual abuse investigations was plainly sufficient to allow him to testify as a lay witness,

under A.R.E. 701, that L.E.'s minimization was not inconsistent with a truthful claim of abuse. *Cf. Shepard v. State,* 847 P.2d 75, 81 (Alaska App.1993) ("psychological evidence whose purpose is merely to establish that certain testimony is not necessarily untruthful ... [is admissible] because the more modest aim of psychological testimony in such cases is to assist the jury in reaching its own interpretation of the evidence").

We note that, in addition to allowing Gomez to express his opinion on minimization, the trial court also permitted him to describe the process of "grooming" by sexual abusers of their victims. Gomez briefly described the "grooming" process in his testimony but expressed no opinion as to whether any conduct by Reece amounted to grooming. On appeal, Reece has not separately argued that this aspect of Gomez' testimony amounted to reversible error. Given the brevity of Gomez' testimony on the issue and its common sense nature, we find no plain error.

4. In any event, since L.E. admitted viewing portions of an adult videotape at Reece's home that depicted sexual conduct similar to the conduct she had reported, exclusion of the videotape resulted in no apparent prejudice to Reece.