Francis COLGAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–589.

Court of Appeals of Alaska.

Dec. 20, 1985.

John Murtagh, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Anchorage and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and SINGLETON and ROWLAND,* JJ.

## OPINION

BRYNER, Chief Judge.

Following a non-jury trial before Superior Court Judge Eben Lewis, Francis Colgan was convicted of three counts of sexual abuse of a minor, in violation of former AS 11.41.440(a)(2). The offenses are class C felonies. Colgan appeals, arguing that the superior court erred in allowing the state to present expert testimony to corroborate the truthfulness of the testimony given by the alleged victims. Colgan also asserts that the trial court did not apply the correct mental element for the offense. Finally, Colgan challenges the sufficiency of the evidence to support his conviction on two of the three counts. We remand.

Colgan's principal challenge is to the testimony of Pam Kirk, a family therapist, who was counseling the three alleged victims of Colgan's sexual abuse, M.O., T.P., and R.P. Kirk was called by the state as an expert witness to "validate" the victims' reports of child abuse. Based on her expe-

* Rowland, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

rience in counseling child sexual abuse victims and on her work with M.O., T.P., and R.P., Kirk was permitted to testify, in part:

> I think all three girls have been abused, and I think they were accurate in their ability to be able to verbalize the differences in degree.

On appeal, Colgan objects to this and other similar testimony given by Kirk, claiming that it should not have been admitted. He argues that "validation" by psychologists or psychiatrists of child sexual abuse reports is a scientific technique which, in forensic application, is not unlike a polygraph examination. He relies on *Frye v. United States*, 293 F. 1013 (D.C. Cir.1923), which held that expert testimony concerning the credibility of a witness, when based on novel scientific techniques, is admissible only if the techniques are shown to have gained general acceptance in the relevant scientific field. *See also Pulakis v. State*, 476 P.2d 474 (Alaska 1970) (applying the *Frye* test to testimony concerning polygraph examinations). Colgan insists that the technique of validating child abuse reports has not gained general acceptance in the relevant scientific field.[1]

Although Colgan's arguments on the merits of this issue appear to us to have considerable merit, and although we entertain serious doubts as to the wisdom of routinely admitting expert testimony of the type permitted in this case, we believe it inappropriate to resolve the issue here. In response to Colgan's argument on the merits, the state has asserted, *inter alia*, that Colgan did not properly preserve this issue for appeal. The state maintains that Kirk's testimony, even if improperly admitted, would not amount to plain error. *See* Alaska R.Crim.P. 47(b). We believe the state's argument has merit.

At trial, Colgan's counsel objected neither to the substance of Kirk's testimony nor to the validity of its scientific underpinnings. His only objection was addressed to Kirk's qualifications as an expert. Specifically, Colgan's trial counsel objected solely on the ground that Kirk did not have a doctorate in psychology. This objection was properly overruled by the trial court—a ruling that Colgan does not dispute on appeal.

■ Colgan's failure to make a reasonably specific objection to Kirk's testimony can hardly be dismissed as inconsequential. Had a proper objection been voiced concerning the validity of the scientific theories upon which Kirk's testimony was predicated, the state might have been prompted to lay a more detailed and comprehensive foundation to support admission of the challenged evidence. Alternatively, the state might have elected to skirt problems of admissibility by presenting Kirk's testimony in a narrower and more circumscribed manner. Moreover, a proper objection might have resulted in a ruling by the court limiting Kirk's testimony or excluding it altogether. We conclude that Colgan failed to preserve this issue for appeal.

■ We must, nevertheless, separately determine whether admission of Kirk's testimony constituted plain error. We find that it did not. Whatever might be its potential for causing prejudice in other cases, under the circumstances of this case we believe that the challenged testimony did not substantially prejudice Colgan's rights, even assuming it was inadmissible.

At the outset, we note that the possibility of any actual prejudice was significantly diminished because Colgan elected to proceed with a non-jury trial. We think the specific findings entered by Judge Lewis bear this out, establishing that the actual

---

1. In support of his analysis, Colgan cites a number of recent cases from other jurisdictions dealing with analogous situations. *See, e.g., State v. Taylor*, 663 S.W.2d 235 (Mo.1984); *People v. Bledsoe*, 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Saldana*, 324 N.W.2d 227 (Minn.1982). *See also State v. Keen*, 309 N.C. 158, 305 S.E.2d 535 (1983). *But* see *State v. Myers*, 359 N.W.2d 604, 608–12 (Minn.1984); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215, 1221 (1983); *State v. Kim*, 64 Hawaii 598, 645 P.2d 1330–35 (1982). *See generally People v. McDonald*, 37 Cal.3d 351, 208 Cal.Rptr. 236, 690 P.2d 709 (1984); *State v. Contreras*, 674 P.2d 792 (Alaska App.1983) *petition for hearing granted,* (Alaska, April 5, 1984).

effect of Kirk's testimony was extremely limited. In determining Colgan's guilt on the sexual abuse charges involving T.P. and R.P., the judge made no reference whatsoever to Kirk's testimony, emphasizing, instead, his primary focus on the credibility of the testimony personally given by T.P., R.P., and other witnesses during the trial:

> As to Count VI, that is the one as to [T.P.'s]—actually the piggy-back ride of both [T.P.] and [R.P.]. Both of those were described as having occurred during the course of being given a piggy-back ride, and [T.P.] in addition stated touching in different locations, in the garage and on Halloween. I recognize that Mrs. Colgan says that on Halloween [T.P.] was not present, however, I feel that that was refuted by other testimony, that [T.P.] was not at the scouts that day, Brownie scouts, and spent at least part of the time at the Colgans, and Mr. Conklin clearly recalls having picked up the children on that day, and having been stuck in the driveway in the snow. So her presence I believe was established that day, and that that count has been clearly established. As to the testimony of ... [T.P.] and [R.P.], they were credible witnesses, their demeanor was convincing to the court, that the touching was not merely [the type] that would [be] incident to giving a child a piggy-back ride, but the hands or fingers were actually outside the clothing and touching the genital area.
>
> I had some concerns at first with [R.P.'s] testimony as to whether or not that could have been accidental, but I feel that the reaction of ... [R.P.] that the fact that it was claimed to have occurred in circumstances very similar to that of her sister's, and that she had expressed the manner in which it occurred with sufficient clarity to the court to believe it, I feel that it was sufficient to substantiate it beyond a reasonable doubt.

Judge Lewis' findings in connection with the charges involving M.O. demonstrate even more convincingly the minimal impact of Kirk's testimony. In acquitting Colgan of Counts II and III of the indictment, which charged first-degree sexual assault on M.O., Judge Lewis plainly expressed his refusal to accept Kirk's testimony in light of his own assessment of M.O.'s credibility as a witness at trial:

> I of course cannot accept as established the professional opinion of someone who was not there and merely says that children do not tend to lie. I am not saying that M.O. lied, I am saying that M.O., because of the impact of all these proceedings, the fact that she was agitated by other—all of the adults questioning her, the fact that she was not able to testify the first day, that the proceedings weren't taken, that she had become very much upset by all of these proceedings, has confused her and put her in a position to be unable to recall with absolute certainty and clarity what it was that really happened.

It is particularly significant that this statement reveals not only Judge Lewis' refusal to accept Kirk's conclusions as to the particular count on which he was ruling, but also his more general perception that, in her testimony, Kirk "merely [said] that children do not tend to lie." This characterization of Kirk's testimony is plainly inconsistent with the theory that Judge Lewis was unduly influenced by Kirk. Judge Lewis' remarks preclude a finding that Kirk's testimony had any appreciable effect on the verdicts of conviction entered in this case. We hold, therefore, that the testimony, even if it was improperly admitted, did not amount to plain error.

■ Colgan next contends that, in reaching the verdicts of conviction, the trial court incorrectly interpreted the requisite mental state for sexual abuse of a minor. In *Flink v. State*, 683 P.2d 725 (Alaska App.1984), this court held that, in order to establish the offense of sexual abuse of a child, it is incumbent on the state to prove that the defendant acted with the specific intent to achieve his own sexual arousal or the sexual arousal of the victim. *Flink*

was decided after completion of the trial in this case and, for that reason, Judge Lewis did not have the benefit of that decision before reaching the verdict here. Judge Lewis' findings do make it apparent that he determined Colgan's conduct to be "intentional" in the sense that Colgan's contact with the victims was knowing rather than accidental or incidental. Yet the findings do not conclusively indicate a determination that Colgan acted with a specific sexual intent.

In context, Colgan's conduct, particularly with respect to R.P. and T.P., was not so unequivocal as to give rise to an inevitable inference of sexual purpose. We therefore cannot say that the trial court's failure to expressly apply the requisite specific intent standard amounted to harmless error. Because Colgan received a non-jury trial, however, we do not believe that a reversal and retrial are called for. Rather, application of the correct standard can be accomplished by simply remanding this case to the superior court for reconsideration of the verdicts of conviction in light of *Flink v. State.*[2]

There remains to be considered Colgan's argument that the evidence on Counts VI and VII is insufficient to support a conviction.[3] In reviewing a claim of insufficiency, we must consider the evidence and the reasonable inferences arising therefrom in the light most favorable to the state and determine whether fair-minded jurors could differ on the question whether guilt has been established beyond a reasonable doubt. *Davis v. State*, 635 P.2d 481, 483 (Alaska App.1981). Applying this standard, we conclude that the evidence as to Counts VI and VII is sufficient to support a conviction.[4]

This case is REMANDED for reconsideration of Counts IV, VI and VII in light of *Flink v. State.*

COATS, J., not participating.

---

**2.** We nevertheless note that the issue of harmless error is extremely close, particularly as to Count IV, which involved the victim M.O. Ultimately, our decision to avoid finding harmless error on this count is based on two considerations. First, regardless of the strength of the evidence against him on this count, Colgan has a right to have every necessary element of the charge resolved by the trial court. *See J.E.C. v. State*, 681 P.2d 1358 (Alaska App.1984). Second, application of the correct mental state requirement can be accomplished by a remand to the trial court without a reversal of the conviction or the need for a new trial. Thus, there appears to be little practical reason to avoid redetermination of the specific intent issue, even if a finding of harmless error might arguably be justified as to Count IV.

**3.** Colgan does not challenge the sufficiency of the evidence on Count IV.

**4.** In arguing his claim of insufficient evidence, Colgan relies heavily on testimony indicating that his sexual contacts with T.P. and R.P. were through clothing and occurred primarily when Colgan gave piggy-back rides to the girls. Colgan insists that this type of incidental contact is so equivocal that it could not support a finding of sexual intent under the standard of *Flink v. State*. Colgan's argument, however, is not based on an interpretation of the evidence in the light most favorable to the state. Both T.P. and R.P. unequivocally testified that Colgan committed the acts of sexual contact by use of his hands. The contacts were not merely incidental to piggy-back rides. Both T.P. and R.P. testified that the contact occurred repeatedly. R.P. testified to at least one specific incident when the touching was not in connection with a piggy-back ride. Moreover, R.P. testified that Colgan would place his hand between her pants and her underpants. Both girls demonstrated to the court the manner in which the touchings occurred. We note that Judge Lewis, in finding Colgan guilty on the basis of this evidence, expressly found that Colgan's sexual contact with his victims was not accidental or merely incidental to the piggy-back rides.