**Larry J. COX, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2356.**

Court of Appeals of Alaska.

Jan. 25, 1991.

Carol A. Brenckle, Kenai, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## OPINION

COATS, Judge.

Larry J. Cox was convicted, following a jury trial, of one count of sexual abuse of a minor in the first degree. AS 11.41.-434(a)(1). The jury acquitted Cox of two other counts of sexual abuse. The alleged victim of all of the counts of sexual abuse was Cox's eleven-year-old step-daughter, M.M. Cox appeals, raising several issues. We reverse.

The indictment charged Larry Cox with three separate incidents of sexual abuse involving his step-daughter, M.M. The first incident charged in Count I, allegedly occurred in April of 1986. M.M. testified that Cox called her into his bedroom one evening when her mother was not home. She testified that Cox inserted his finger into her vagina, fondled her breasts, and made her touch his penis. The second incident, which was charged in Count III, occurred six months later in October of 1986. M.M.'s mother, Linda Cox, described this incident in her testimony at trial. She testified that she saw Cox kneeling beside M.M.'s bed and saw Cox kissing M.M.'s naked buttocks while M.M. was sleeping.

The third incident, which was charged in Count II, allegedly occurred in November of 1986. There is some discrepancy as to the exact date on which it occurred. The indictment states that the incident occurred on or about the thirtieth day of November.

Despite the confusion concerning the date, M.M. consistently described this bathroom incident. According to M.M., although she was capable of bathing herself, Cox helped her one evening in November. According to M.M., Cox put soap on his finger and inserted his finger into M.M.'s vagina while he was bathing her. He then dried her off with a towel despite protests from M.M. and her mother. This is the incident for which Cox was ultimately convicted.

The police were contacted in January of 1987. Linda Cox testified that she did not go to the police earlier because she had trouble believing her husband would commit sexual abuse. She stated she became convinced that her daughter was telling the truth when she observed changes in M.M.'s behavior, particularly in her relationship to her step-father. Linda Cox stated that M.M. began to act distant and withdrawn and had difficulty sleeping. M.M. began seeing a therapist at the time that Linda Cox made the report to the police.

On February 26, 1987, the Grand Jury indicted Cox on two counts of sexual abuse of a minor in the first degree in violation of AS 11.41.434(a)(1), and one count of sexual abuse of a minor in the second degree in violation of AS 11.41.436(a)(2). The major issue in this case concerns the testimony of a clinical psychologist, Paul Turner. The state called Turner as an expert witness in rebuttal. Turner had never examined M.M., but testified as an expert concerning the behavior of minors who are sexually abused.[1]

Dr. Turner testified that a victim of sexual abuse who was ten to twelve years old would be reluctant to come forward and report the incident. He testified that any reports might be very indirect or vague. At the conclusion of the direct examination the following occurred:

Q: Okay. I guess what I'm getting at, if you have, for instance, an 11– or 12–year–old girl that came to you and gave you the following scenario, step-father took me into the bedroom, sat down on the bed with me, had me lay down, unzip my pajamas, caress and kiss my breast, kiss my vagina, inserted his finger into my vagina a short ways, moved it around, this kind of action, took my hand and made me touch his penis, what would be your impression of a girl that age being able to fabricate that kind of an incident?

A: Well, I—I, first of all, would doubt that it's a fabrication. It's very unusual for 11– or 12–year–olds to—to have those kinds of experiences with

---

1. The state originally attempted to call the therapist who was treating M.M. However, the court ruled that this therapist could not testify for reasons which are not at issue in this case. The state then called Dr. Turner as its expert witness.

anyone. My—I would say that—that this is an instance of sexual abuse and that individual or that child and adult are in need of treatment for that.

Cox did not object to this testimony.

On cross examination, Cox established that Dr. Turner had never examined or talked to M.M. Dr. Turner also conceded that children sometimes lie to please their parents. However, he indicated that in general, where the child repeated a detailed story of sexual abuse over a period of time, he would conclude that the sexual abuse occurred.

Following Dr. Turner's testimony, Cox asked the court to allow him to call an expert witness on his own behalf, Dr. James Harper of Anchorage. Cox indicated that he had not talked directly to Dr. Harper, but that it would be his intention to call Dr. Harper to testify that children can and do lie about sexual abuse. The state opposed this request arguing that, according to Cox's offer of proof, Dr. Harper's testimony would be consistent with Dr. Turner's. The court noted that Dr. Turner conceded that children will sometimes lie to please their parents. The court denied Cox's application for surrebuttal.

In argument, the state emphasized Dr. Turner's testimony. The state argued that Dr. Turner had testified that a child who repeatedly gave a detailed account of sexual abuse was a victim and that children did not make up stories of sexual abuse.

The issue of the proper use of expert testimony in child abuse cases is one which has frequently arisen in this court. We have consistently been critical of expert testimony which suggests that children do not lie about sexual abuse. In *Colgan v. State*, 711 P.2d 533 (Alaska App.1985), the prosecution presented a witness who testified that, in her opinion, the victims in the case had been abused. We indicated that Colgan's arguments that the expert testimony was improper had "considerable merit" and indicated that "we entertain serious doubts as to the wisdom of routinely admitting expert testimony of the type permitted in this case." *Id.* at 534. However, we indicated that Colgan had not properly preserved the issue for appeal, and concluded that the testimony did not constitute plain error. In deciding that the testimony did not constitute plain error, we considered the fact that Colgan had elected to have a non-jury trial, and that the trial judge made specific findings which showed that he did not give undue consideration to the questioned testimony. *Id.* at 534–35.

In *Rodriguez v. State*, 741 P.2d 1200, 1204 (Alaska App.1987), we stated:

Testimony by an expert witness that purports to establish by scientific principles that another witness is telling the truth treads on dangerous legal ground. On the other hand, testimony by an expert witness which provides useful background information to aid the jury in evaluating the testimony of another witness is admissible.

In *Anderson v. State*, 749 P.2d 369, 373 (Alaska App.1988) (citations omitted), we stated:

In *Rodriquez*, we recognized that several different kinds of expert testimony regarding the behavior of sexually abused children have been offered for a variety of purposes. It is therefore difficult, and perhaps improper, to formulate a single rule to cover all such cases. However, we did isolate one kind of case in which we concluded that such expert testimony was appropriate. When a complaining witness testifies that he or she has been the subject of sexual or physical abuse and the defense seeks to discredit this testimony by showing that the witness' conduct ... was inconsistent with the claimed abuse and therefore that the claim of abuse was false, the state should be permitted to offer expert testimony that other members of the relevant class ... characteristically exhibit such conduct even though they are, in fact, abused.

We have been critical of testimony suggesting that children never lie about sexual abuse. Moreover, we have never authorized expert testimony seeking to establish that a person is a member of a particular class or group ... by showing

that they exhibit behavioral characteristics common to that group....

In *Haakanson v. State*, 760 P.2d 1030, 1036 (Alaska App.1988), we stated:

*Rodriguez* and *Anderson*, read together, permit expert testimony that responds to a defense claim that a complaining witness' conduct is inconsistent with being sexually abused by showing that similar conduct is exhibited by those who are sexually abused. These decisions do not permit testimony offered to prove that the complaining witness is sexually abused by showing that the complaining witness exhibits behavior similar to that exhibited by sexually abused children.

In *Nelson v. State*, 782 P.2d 290, 297–99 (Alaska App.1989), the state called an expert witness to testify about the behavioral characteristics of sexually abused children. *Id.* at 297. The expert stated that the victims' reports of sexual abuse were consistent with valid reports of sexual abuse. We concluded that the expert's testimony "effectively informed the jury that in his expert opinion, [the victims] were telling the truth and had been abused by Nelson." We concluded that the testimony was improper. *Id.* at 299.

■ In the face of these prior decisions, Dr. Turner's testimony was proper to the extent that Dr. Turner testified that M.M.'s reports of sexual abuse were not inconsistent with the kinds of reports which other young victims of sexual abuse have made. In other words, Dr. Turner could testify that it was not unusual for a victim of sexual abuse to fail to report the abuse immediately, to report the abuse in vague ways, and to make inconsistent statements. This was the beginning part of Dr. Turner's testimony. This testimony was admissible to rebut the inferences by the defense that M.M.'s behavior in reporting the incidents tended to show that she was lying about the incidents. However, Dr. Turner's testimony went far beyond

that. In particular, Dr. Turner essentially testified that because M.M. gave a detailed account of the sexual abuse, M.M. had been sexually abused. Dr. Turner essentially testified that M.M. was telling the truth. The prosecution effectively argued this proposition to the jury.

Therefore, we conclude that Dr. Turner's testimony, if not plain error, approached plain error.[2] Unlike *Colgan*, the case here was tried to a jury and we do not have specific findings from the trier of fact to indicate how the jury weighed Dr. Turner's testimony.

■ The state points out that the hypothetical which the prosecutor gave described an incident for which the jury ultimately acquitted Cox. The state therefore argues that Dr. Turner's testimony could not have been harmful. However, the major issue in this case was Cox's credibility against M.M.'s credibility. Dr. Turner's expert testimony came down squarely on the side of bolstering M.M.'s credibility. In cases where credibility is the main issue, the jury faces the difficult question of which witness to believe. Where a respected expert witness gives his opinion that children who give detailed accounts of sexual abuse are telling the truth, the jury may give great weight to that opinion in resolving the question of credibility. Dr. Turner's premise, that a child who gives a detailed account of sexual abuse is telling the truth, would apply to all of the counts with which Cox was charged. We therefore do not agree that Dr. Turner's testimony would only have an impact based on the particular hypothetical he was given.

In assessing the potential harm from Dr. Turner's testimony, we are also concerned about the emphasis which the prosecution gave this testimony in final argument. We recognize that the defense pointed out that Dr. Turner never talked to M.M. and had little direct knowledge of the facts of this case. However, in the context of this case,

2. In fairness to the parties and trial judge in this case, we wish to point out that all of the cases which we rely on in deciding that Dr. Turner's testimony was improper are cases which we announced after the trial in this case. The only

exception is *Colgan*, which we decided in December of 1985. Trial in Cox's case took place in July of 1987, shortly before we announced the decision in *Rodriguez*.

we believe that Dr. Turner's testimony, in which he essentially vouched for M.M.'s credibility, may have had a significant impact on the case.

▆▆▆ Following Dr. Turner's testimony, Cox's counsel indicated that he wished to contact an expert witness, Dr. James Harper, to testify on surrebuttal. Cox indicated that he had not had time to talk to Dr. Harper directly, but that he intended to call Dr. Harper to testify that children can and will lie regarding claims of sexual abuse. The state opposed this application, indicating that Dr. Turner had admitted on cross-examination that children could be manipulated by their parents and might lie about sexual abuse. The court denied Cox's application for surrebuttal.

As we have previously indicated, we see Dr. Turner's testimony as problematic, approaching plain error. The trial court has broad discretion whether to allow surrebuttal. In addition, given the offer of proof which Cox made, there are serious questions as to how helpful Dr. Harper's testimony would have been or even if Cox could have obtained Dr. Harper's testimony on short notice. However, given the fact that we see Dr. Turner's testimony as so obviously prejudicial as to approach plain error, we believe that the trial court was under a duty to give counsel every opportunity to combat the improper testimony. Although it is true that Dr. Turner conceded on cross-examination that children could be manipulated in cases of child abuse, his overall testimony was to the effect that it would be difficult to so manipulate a child. The overall tenor of his testimony was that a child who consistently gave detailed reports of sexual abuse was reporting actual abuse. Under these circumstances, Cox

should have been given an opportunity to contact an expert to combat this testimony. We therefore conclude that the trial court erred in not allowing Cox to put on surrebuttal. We accordingly reverse Cox's conviction.[3]

REVERSED.

BRYNER, C.J., concurs.

BRYNER, Chief Judge, concurring.

I am reluctant to characterize Dr. Turner's testimony as "approaching plain error." Cox did not object to the testimony below and has not directly raised the issue on appeal.

In my view, however, the outcome of this case should not turn on whether Turner's testimony verged on plain error. Whether proper or not, the testimony was obviously extremely significant to the state's case and extremely damaging to Cox's. Because Turner testified on rebuttal, and, for this reason, the scope of his testimony was not apparent until he took the stand, Cox's inability to have an expert of his own immediately available for surrebuttal was certainly understandable. Given the importance of Turner's testimony and its presentation on rebuttal, I believe that Cox should have been allowed to present his own expert witness in surrebuttal unless there was some compelling reason to deny him that opportunity.

The trial court's only apparent reason for denying Cox this opportunity was its conclusion that the testimony of Cox's proposed expert would have been cumulative. Given the circumstances, however, Cox's offer of proof as to his proposed expert testimony was necessarily tentative and conjectural. I do not believe that the trial

---

**3.** Our disposition of this issue makes it unnecessary to decide most of Cox's other contentions. However, Cox raises one additional issue which we must address. Cox argues that the trial court erred in denying his motion for judgment of acquittal. The motion for judgment of acquittal should be granted only if the evidence is such that fair minded jurors would have to conclude that guilt was not established beyond a reasonable doubt. *Jennings v. State,* 404 P.2d 652, 654 (Alaska 1965). In reviewing this question, the trial court and the appellate court view

the evidence in the light most favorable to the state. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981). In the instant case, M.M.'s testimony, if believed by the jury, was sufficient for a jury to convict Cox. The fact that M.M. was uncertain about the dates when the offense occurred, or that M.M.'s hymen was not damaged, would not compel a jury to acquit Cox if the jury believed M.M. We accordingly conclude that the trial court did not err in denying Cox's motion for judgment of acquittal.

court was justified in concluding from the justifiably sketchy offer that Cox's expert could only have provided cumulative testimony. In my view, there was no sound reason to preclude Cox from presenting an expert witness to rebut Dr. Turner's testimony. Accordingly, I would find that the trial court abused its discretion in denying Cox the opportunity to present his own expert.