AUSTIN E. LICKEY, AKA AUSTIN ORR, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 20308

March 5, 1992                                    827 P.2d 824

---

[Rehearing denied May 18, 1992]

*James J. Jackson*, State Public Defender, *Janet S. Bessemer*, Deputy Public Defender, *Patrick Gilbert*, Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Mariah Sugden*, District Attorney, *Dan L. Papez*, Deputy District Attorney, White Pine County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Austin Lickey (Lickey) was tried by a jury and convicted for sexually assaulting his granddaughter, who was seven years old at the time of the assaults. Lickey was sentenced to four consecutive life terms in the Nevada State Prison.

Prior to trial, Lickey filed a motion to have the victim and her mother examined by a defense psychiatrist. The purpose of the proposed examination was to refute the testimony of the State's witness, a doctor of clinical psychology who, after interviewing

the child six times, opined that the victim had "Post Traumatic Stress Disorder-Secondary to Child Sexual Abuse." The defense also wished to show that the victim's mother, Barbara, had a long-standing enmity toward her father, Austin Lickey. In the motion to allow the defense a psychiatric examination and testimony, Lickey asserted that it was unfair to allow the State to rely on an examination conducted by its own expert and then deny the defense the opportunity to have the same benefit. On April 28, 1989, a hearing was held and the district court denied the motion. Relying on Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987), the court concluded that the veracity of the victim and her mother should be decided by the jury because multiple psychiatric examinations might intimidate the child. No evidence was introduced to show that another psychiatric interview would affect the child in any way. The court also found that other evidence supported the victim's testimony.

At trial, the court admitted testimony regarding a prior bad act committed by Lickey. The court ruled that this evidence was admissible to show intent under McMichael v. State, 94 Nev. 184, 577 P.2d 398 (1978). Barbara testified that in 1983 or 1984, when she was living with her parents in Ruth, Nevada, she was sleeping on the couch when her father "put his hand underneath the blanket and went towards my bottom half and told me that's how I could pay him back the twenty dollars."

The primary evidence presented against Lickey at trial was the testimony of the victim, who was then eight years old. At the time of the alleged assaults, she was living with her grandparents in Ruth. She testified that the first incident occurred while she was playing with her Barbie doll in the living room of Lickey's home. Lickey put his finger up her "private part" and started wiggling his finger, which hurt. A second incident occurred while she was standing on a chair in the kitchen stirring a pot of spaghetti on the stove. Lickey approached her, stuck his finger in her vagina, and began wiggling his finger. The third incident occurred one night while the victim was in bed. Lickey came into her bedroom and stuck some kind of silverware in her "private part."

The final incident occurred in a car while traveling from Ely to Ruth. The victim testified that her grandmother was driving, and she was seated on the front seat between her grandmother and Lickey. Lickey was drunk and he struck his finger in her vagina and wiggled his finger. She told her grandmother, who became angry, pulled the car to the side of the road, and began slugging Lickey. A police car then pulled in front of the vehicle, and both the victim's grandmother and the police officer exited their vehicles and had a conversation in front of Lickey's vehicle. At trial,

through the use of an anatomically correct doll, the victim identified the vagina as the place Lickey touched her in each incident.

Lickey claims the trial court erred in denying his motion to have a defense psychiatrist examine the victim and testify at trial. Lickey argues that because the prosecution raised the issue of the effect of the victim's mental well-being on her veracity, he should have been permitted to have a psychiatrist testify to support the defense's theory that the victim lied about the cause of her injuries. We are convinced by this argument.

The district court permitted the prosecution to call a clinical psychologist specializing in child sexual abuse, who reiterated what the minor victim had told her during their interviews. The psychologist stated her expert conclusion that the victim had been sexually molested, and she opined that the victim was truthful. The prosecution had two evidentiary advantages over the defense. First, it was able to provide expert testimony that the victim was assaulted sexually and had post traumatic stress disorder as a result of these assaults, a conclusion the defense was not given the opportunity to controvert with its own expert. Second, the prosecution's expert was permitted to testify as to the veracity of the victim-witness. Numerous jurisdictions, as well as general notions of fairness, dictate that failure to provide equal access to expert psychiatric witnesses prejudices the defense.

In determining that Lickey had no right to have a psychiatrist examine the victim and testify at trial, the district court relied upon Washington v. State, 96 Nev. 305, 608 P.2d 1101 (1980). In *Washington,* the defendant requested a psychiatric examination of the victim after trial, to support his motion for a new trial based on his contention that the victim was lying. This court concluded that the prosecution's case was not so void of corroboration that an exam was warranted, and that in any event the decision to appoint a psychiatrist for the defense post-trial was within the discretion of the trial court. *Id.* at 307-308, 608 P.2d at 1102-03. In *Washington,* however, the prosecution had no expert of its own. Moreover, we did not address the issue presented in this case: to wit, whether the same standard applies if the trial court permits the prosecution's expert to testify at trial but denies the defendant the same opportunity. The dissent opines that we misunderstand the issue. We suggest that the contrary is true and that the dissenting justice refuses to acknowledge the obvious differences between the *Washington* case and the one at issue here.

The assistance a psychologist offers a defendant is very important in sexual assault cases. *See* Warner v. State, 102 Nev. 635, 729 P.2d 1359 (1986). In *Warner,* we reversed a conviction for

sexual assault because of ineffective counsel. We held that defense counsel was ineffective in part because he failed to interview the complaining minor or request a court order requiring her to undergo a physical or psychological examination. If failure to request a psychological examination constitutes grounds for a finding of ineffective counsel, it logically follows that a defendant facing charges of sexual assault of a minor should be afforded an expert psychiatric witness.

The few jurisdictions which have examined this issue have agreed that in sexual abuse cases, the defense should have the same opportunity to present expert testimony as the prosecution. Cox v. State, 805 P.2d 374 (Alaska App. 1991) (court abused its discretion by denying defense opportunity to present expert to testify that children lie about sexual abuse); State v. Zeh, 509 N.E.2d 414 (Ohio 1987) (evidence from prosecutor's interview is inadmissible unless witness consents to court-appointed, independent examination by the defense). In *Zeh,* the court focused on the concept of judicial courtesy to both sides and decided that since the victim's veracity was at issue, "it could only have been fair to have either permitted defendant to develop such evidence for his defense, or to have denied the prosecution any use of that expert testimony applicable to the contested and essential element of the crime." *Zeh,* 509 N.E.2d at 418. In *Cox,* the trial court excluded the defense expert's testimony on the grounds that the defendant had ample opportunity to cross-examine the prosecution's expert. Concluding that cross-examination was an inadequate substitute for surrebuttal, the appellate court stated that "the trial court was under a duty to give [defense] counsel every opportunity to combat the improper testimony." *Cox,* 805 P.2d at 379. We conclude that unless competent evidence presents a compelling reason to protect the victim, it is error to deny a defendant the assistance of a defense psychologist or psychiatrist to examine the child-victim and testify at trial when the State is provided such assistance. Because police officers and the State's experts were permitted to conduct over a dozen interviews with the child-victim, the defendant should have been afforded at least one.

The dissent cites Colley v. State, 98 Nev. 14, 639 P.2d 530 (1982), in support of the contention that the denial of a defense motion for a psychiatric examination of the victim was not an abuse of discretion. We conclude that *Colley* is not controlling. In *Colley,* the State did not call a psychiatric witness at trial, nor was the issue here presented argued in that appeal. Moreover, unlike the case at bar, the victim's testimony "was amply corroborated, and her emotional state was not subject to serious attack." *Id.* at 17, 639 P.2d at 532.

We also conclude that it is error to permit the State to have a psychologist testify as to the veracity of a victim. The testimony the *Cox* court called "improper" was testimony of the prosecution's expert psychiatrist verifying a child's detailed reports of sexual abuse. In the case at bar, the State's psychologist testified positively about both (1) the veracity of the victim, and (2) her opinion that the victim's mental condition was consistent with someone who had been sexually abused. In child sexual assault cases, NRS 50.345 permits a treating health professional to testify that the victim's behavior or condition is consistent with that of a sexual assault victim. In the case at bar, however, the State's psychologist went beyond that which is allowed by the statute.

An expert may not comment on the veracity of a witness. *See* Townsend v. State, 103 Nev. 113, 734 P.2d 705 (1987). In *Townsend*, we allowed expert testimony concerning post traumatic stress disorder, because the testimony was "highly probative." We unequivocally stated that it was improper for an expert to comment directly on whether the victim's testimony was truthful, because that would invade the prerogative of the jury.

Other jurisdictions are in accordance with our *Townsend* holding. *See, e.g.*, State v. Bressman, 689 P.2d 901 (Kan. 1984) (expert opinion becomes inadmissible as soon as it passes on credibility of the witness); State v. Logue, 372 N.W.2d 151 (S.D. 1985) (social worker's testimony that victim probably gained his sexual knowledge from sex with defendant was reversible error); Gale v. State 792 P.2d 570 (Wyo. 1990) (expert commentary on child's veracity is plain error). In *Logue,* the court reversed the conviction based on expert testimony similar to that proffered in the instant case because it "lent a stamp of undue legitimacy to [the victim's] testimony." *Logue,* 372 N.W.2d at 157. We find it persuasive that even in South Dakota, a state so tough on crime that it has the most severe recidivism penalties in the nation, this evidence was too prejudicial to permit a conviction to stand.[1]

Finally, the evidence used to establish that Lickey committed the four acts of sexual assault consisted almost entirely of the child-victim's testimony, which Lickey disputed. There was no direct evidence corroborating the allegations of sexual assault.

---

[1]*See* Solem v. Helm, 463 U.S. 277 (1983) (Supreme Court held that indeterminate life sentence imposed by South Dakota Supreme Court was excessive punishment for habitual criminal convicted of uttering $100 no account check).

Contrary to the dissent's contention, the evidence supporting each of the four charges was not overwhelming. For example, other than the victim's testimony, all of the evidence regarding the allegations of the fourth count concerning an assault in the vehicle supported Lickey's version of the facts. Lickey's wife testified that the event never occurred, and that she did not scold or hit Lickey or have a conversation with a police officer. Moreover, no law enforcement officer was called to testify about the incident. Given the character of the evidence, the assistance and testimony of a psychiatrist for Lickey could have had a significant effect on the outcome of the trial. Such expert testimony could have created a reasonable doubt as to the validity of some, if not all, of the counts charged against Lickey.

The dissent notes that the minor victim has endured a preliminary hearing and jury trial. We fully share our dissenting colleague's sympathy and concern for the minor victim in this case, and agree that she has done everything asked of her. We are also cognizant of the additional work and trauma often caused by a retrial, and are most reluctant to compel any victim, especially a child, to endure future anguish unless truly necessary. However, our constitutional responsibility demands far more than an inquiry into the impact of the crime on the victim. We are under a sworn duty to consider forthrightly and unemotionally whether the trial, resulting in a conviction, was fundamentally fair under standards of due process.

It is hardly necessary to emphasize that this court exercises substantial caution in overturning jury verdicts in any criminal case. Fewer than four percent of the convictions appealed from are sent back to the trial court for retrial, and the vast majority of these reversed cases are successfully retried by the State upon remand. We reverse for retrial only when a majority of the court considers it necessary to do so because of prejudicial error revealed by the record.

After considering the claims made in the dissent, we again re-examined the record, the briefs, and our conclusions. We were again left with the abiding conviction that justice, fairness, and the law of this jurisdiction require that appellant Lickey be given another trial.

Under the circumstances of this case, because Lickey was denied the assistance of an expert psychiatric witness, when the State was provided such a resource, we conclude that Lickey did not receive a fair trial. And, because the case must be reversed on this ground, we need not reach the issue of whether the prior bad act was wrongly admitted. Accordingly, we reverse and remand this case for a new trial.

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

The decision whether to order a psychiatric examination of a sexual assault victim "is a matter left to the sound discretion of the trial court." Washington v. State, 96 Nev. 305, 307, 608 P.2d 1101, 1102 (1980) (citations omitted). I see no reason to depart from this policy, especially when the victim is a child of tender years. Here, after determining that multiple psychiatric examinations might adversely affect the young victim, the trial judge wisely refused to permit an additional psychiatric examination. The majority wrongly disagrees with the learned judge's decision.

The issue presented, pursuant to our decision in *Washington*, is whether Mr. Lickey demonstrated a compelling reason for an additional psychiatric examination. He did not. Compelling reasons do not exist "unless there is little or no corroboration of the victim's allegations and the defense has questioned the effect of the victim's emotional or mental condition upon her veracity." *Washington*, 96 Nev. at 307, 608 P.2d at 1102. In *Washington*, the victim's testimony was corroborated and the defendant engaged in extensive cross-examination. As a result, we held that the defendant failed to demonstrate a compelling reason for a psychiatric examination and that, therefore, the trial court did not abuse its discretion by refusing to order such an examination.

In the case before us, the young victim's testimony was corroborated by several witnesses:

1. Dr. Kathie Coopersmith, an Ely pediatrician, examined the victim on October 5, 1988. Dr. Coopersmith testified that the victim had sustained trauma to her vagina consistent with penetration by a finger and/or a foreign object. Moreover, Dr. Coopersmith determined that the injuries had occurred within the previous two weeks.

2. The victim was also examined by Kathleen Peele, a pediatric nurse and clinic director for the Washoe County Child Sexual Abuse Investigative Team, on October 26, 1988. In conjunction with her testimony, Ms. Peele presented photographs of the victim's vaginal area which illustrated injuries consistent with those found by Dr. Coopersmith. Ms. Peele also testified that the injuries sustained by the victim were consistent with vaginal penetration by a finger and/or foreign object.

3. Detective Martin Sorenson of the White Pine County Sheriff's Office testified that he had videotaped an interview with the victim on October 5, 1988, approximately six months before the trial, during which she recalled the four incidents of abuse giving rise to this prosecution. The vic-

tim's statements at that time were consistent with her subsequent testimony at trial. The videotaped interview was played for the jury.

4. Dr. Joann Behrman-Lippert, Ph.D., an expert in child abuse, interviewed the victim six times. Videotapes were made of the interviews on October 12 and 13, 1988, which were also played for the jury. Dr. Behrman-Lippert opined that the victim had in fact been sexually abused.

Finally, the victim's testimony was corroborated by Mr. Lickey's neighbor, who testified that the victim told her that Mr. Lickey had penetrated her vagina with silverware.

The record also shows that Mr. Lickey's counsel extensively cross-examined the victim. Yet, despite being subjected to cross-examination during both the preliminary hearing and the trial, the young victim's testimony was remarkably consistent. Because of this substantial corroborating evidence and extensive cross-examination, I cannot agree that the decision in this case should differ from the one reached in *Washington*.

In Colley v. State, 98 Nev. 14, 639 P.2d 530 (1982), *cert. denied*, 479 U.S. 839 (1986), we again held that the denial of a defense motion for a psychiatric examination of a victim was not an abuse of discretion, reasoning that the victim's testimony was amply corroborated and her emotional state was not subject to serious attack. *Id.* at 17, 639 P.2d at 532 (citing Washington v. State, 96 Nev. 305, 608 P.2d 1101 (1980)). The majority states that *Colley* is not controlling. I disagree.

In *Colley,* we held that even where the testimony of a prosecution witness was not substantially corroborated, the trial court could properly refuse to subject the witness to a psychiatric examination where "the jury was able to observe and evaluate [the victim's] emotional condition during her testimony on cross-examination." *Colley,* 98 Nev. at 17, 639 P.2d at 532. In the case at bar, the victim's testimony was substantially corroborated, and the jury was likewise able to observe and evaluate her testimony on cross-examination. Therefore, I see no reason to depart from our general policy of leaving this issue in the able hands of the trial judge.

The majority relies upon State v. Zeh, 509 N.E.2d 414 (Ohio 1987), and Cox v. State, 805 P.2d 374 (Alaska App. 1991). Both cases, however, are readily distinguished from the matter before us today, and neither case provides the defense with the right to a second psychiatric examination of a minor child performed by an expert of the defendant's choosing.

The decision in *Zeh,* which required an independent psychiatric examination of a victim-witness, was expressly limited to those circumstances where the victim's mental impairment is an

*essential* issue.[1] It did not involve submitting a child-victim to a psychiatric examination. In *Cox,* a child abuse conviction was reversed solely because a clinical psychologist testified as to the child-victim's veracity in rebuttal for the state and the defense was denied surrebuttal. The corroborating evidence in *Cox* did not approach the magnitude of that before us today. Moreover, the majority incorrectly states that Dr. Behrman-Lippert testified as to the victim's veracity. The fact that such testimony did not occur further distinguishes this case from *Cox.*

This young victim has bravely endured an investigation, a preliminary hearing and a jury trial. After carefully considering the due process issue addressed by the majority, I am convinced that common sense and reasonableness should prevail. Mr. Lickey received a fair trial and was convicted because of the overwhelming evidence presented against him, not because he was denied a second psychiatric evaluation. I cannot endorse sending this case back to the trial court when the evidence speaks so loudly to the guilt of the accused.

---

[1]In *Zeh,* a defendant was on trial for violating an Ohio statute prohibiting an unmarried person from engaging in sexual conduct with a partner whose "ability to appraise the nature of or control his or her own conduct is substantially impaired." *Zeh,* 509 N.E.2d at 417 (quoting Ohio Rev. Code Ann. § 2907.03 (Anderson 1987)). The victim was a male adult afflicted with slight mental retardation. The Ohio Court of Appeals has since held that *Zeh* does not apply to juvenile rape situations unless a "defendant is charged with *substantially impairing* his victim's judgment or control through drugs or narcotics." In re Johnson, 573 N.E.2d 184 (Ohio Ct. App. 1989) (emphasis added).