**Kyong Suk LEE, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. A–8205.

Court of Appeals of Alaska.

May 23, 2003.

---

Andrew L. Josephson, Josephson & Associates, Anchorage, for Appellant.

C. Levi Martin, Assistant Municipal Prosecutor, and William A. Greene, Municipal Attorney, Anchorage, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

This case presents the question of what culpable mental states the Municipality must prove when it charges a person with maintaining a place of prostitution under Section 8.65.060 of the Anchorage Municipal Code (AMC). Kyong Suk Lee was convicted of two separate violations of AMC 8.65.060(A), which provides that it is "unlawful for any person to knowingly maintain or operate a place, building, structure or part thereof, vehicle, mobile home, or other conveyance for the purpose of prostitution or assignation." Lee claims that under this ordinance, the Municipality not only had to prove that she knowingly maintained a place where prostitution occurred, but that she did so with the intent that the place be used for prostitution. For the reasons set out below, we agree.

Lee also claims that with regard to the "maintaining" charge, the district court should have instructed the jury on a lesser-included offense derived from AMC 10.40.050, the section of the municipal code that pertains to the licensing and regulating of adult-oriented service establishments. Lee presented this argument to District Court Judge Stephanie Rhoades, who concluded that this section of the municipal code did not apply. We agree with Judge Rhoades.

### Facts

Lee's convictions arose from two undercover operations conducted by the Anchorage Police Department in January 2001 and May 2001. At both times, Lee was the manager of Fantasy Club, an escort service in Anchor-

age. In January 2001, and again in May 2001, the Anchorage Police Department's Special Assignment Unit conducted two undercover operations to determine if prostitution was occurring at Fantasy Club. Both times, the unit's undercover officers found escorts engaging in prostitution.[1]

As a result of these undercover operations, Lee was charged in two separate cases for violating AMC 8.65.060. Additionally, in the instant case, Lee was charged with violating the release conditions imposed after her January 2001 arrest.[2] Lee had a separate trial for each incident. Her first trial began in late October 2001. She was tried by a jury, who found her guilty as charged for the January 2001 incident. Approximately a week after her jury trial, Lee's second trial began. In the second trial, she waived her right to a jury, and the judge found her guilty of both charges relating to the May 2001 incident. Judge Rhoades presided over both trials.

### Discussion

### The mental states of AMC 8.65.060

As set out above, Lee was charged with "knowingly maintain[ing] or operat[ing] a place, building, structure or part thereof . . . *for the purpose* of prostitution or assignation."[3] At her second trial, Lee argued that this ordinance has two mental states, "knowingly" and "intentionally." Judge Rhoades, however, applied only the "knowingly" mental state. On appeal, Lee claims that the language "for the purpose" connotes specific intent. Hence, she argues that not only did the Municipality have to prove that she knowingly maintained a place where prostitution occurred, but the Municipality also had to prove that she did so with the intent that prostitution take place there.

We conclude that Lee is correct. Although we have not had the occasion to construe this ordinance before, in *Dawson v.*

---

**1.** *See* AMC 8.65.020–030.

**2.** AMC 8.30.110(A).

**3.** AMC 8.65.060(A) (emphasis added).

*State*[4] we construed a similar state statute. *Dawson* required us to determine the mental state required by AS 11.71.040(a)(5), Alaska's "crack-house" statute. In pertinent part, this statute makes it an offense for a person to "knowingly keep[ ] or maintain[ ] any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is used for keeping or distributing controlled substances in violation of a felony offense under this chapter[.]"[5] We concluded that this statute required that a defendant act knowingly "both with respect to the proscribed conduct . . . and with respect to the existence of the illegal use itself."[6]

In reaching this conclusion we relied both on related federal case law and on the language in the statute. Importantly, when analyzing this statute, we illustrated the difference in mental states between two subsections of a federal drug statute, one of which has "for the purpose" language and one of which does not. We pointed out that the subsection that applies when the accused " 'knowingly open[s] or maintain[s] any place *for the purpose* of' illegal drug-related activity is interpreted to require that the accused act knowingly with respect to the conduct of maintaining, and intentionally with respect to the illegal use of the premises opened or maintained."[7] We noted that when interpreting the statutory language, federal courts have held that there are two mental elements, knowledge and purpose.[8]

This result is supported by Professor LaFave, who writes that the modern approach, adopted by the Model Penal Code, is to use the word *purpose* to mean *intent*.[9] According to Professor LaFave, under this approach, "as to the results of one's conduct, the Code provides that one acts 'purposely' when 'it is his conscious object . . . to cause such a result', while one acts 'knowingly' if he is aware that it is practically certain that his conduct will cause such a result."[10]

Additionally, when discussing common law accomplice liability, Professor LaFave recognizes that an alleged accomplice's actions often fall short of criminal. He states that "there are many . . . instances in which the alleged accomplice's actions will qualify only as knowing assistance, in that he is lending assistance or encouragement to a criminal scheme toward which he is indifferent."[11] Professor LaFave provides as an example of this a "lessor [who] rents with knowledge that the premises will be used to establish a bordello."[12] Professor LaFave points out that the majority view—which he notes has been adopted under the Model Penal Code[13]—holds that "traditional definitions of accomplice liability 'demand that [the accessory] in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "[14] Hence, under the majority view of common law accomplice liability, the Municipality would have to prove that Lee knowingly maintained a place where prostitution occurred with the intent that the place be used for prostitution.

■ When courts are presented with a question as to the proper construction of a statute or ordinance that potentially modifies the common law, "the normal rule of interpretation is that such statutes are construed so as to preserve the pre-existing common law unless the legislature has clearly indicat-

---

**4.** 894 P.2d 672 (Alaska App.1995).

**5.** *Id.* at 674.

**6.** *Id.* at 678.

**7.** *Id.* at 678 n. 7 (emphasis in original) (citation omitted).

**8.** *Id.* (citation omitted).

**9.** *See* 1 Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 3.5, at 305–06 (1986) (citations omitted).

**10.** *Id.* at 306.

**11.** 2 LaFave, § 6.7, at 146.

**12.** *Id.* (quoting Model Penal Code § 2.06, Comment at 316 (1985)).

**13.** *See id.* at 148 ("The Code thus limits accomplice liability to instances in which there exists 'the purpose of promoting or facilitating the commission of the offense' ") (citing Model Penal Code, § 2.06(3)(a)).

**14.** *Id.* at 146–47 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938)).

ed its purpose to change that law." [15] Here, the record before us holds no indication that the Anchorage Assembly intended to change the mens rea requirements of the offense of maintaining a place of prostitution from the common law.

■ Considering our analysis in *Dawson*, Professor LaFave's discussion on mental states, and the lack of any evidence before us that the assembly intended to change the common law when it codified this offense, we conclude that under AMC 8.65.060 the Municipality has to show that a defendant acted "knowingly" with respect to the conduct of maintaining or operating a place of prostitution and that a defendant acted "intentionally" with respect to the illegal use—that is, prostitution—of the premises maintained.

Judge Rhoades's verdict demonstrates that she applied only the "knowingly" standard in this case. This was error. However, because Lee was tried without a jury, a reversal and retrial are not necessary. Rather, a remand will allow Judge Rhoades to apply the required standard and to reconsider the verdict in light of our decision on this issue.[16]

*Lee's argument concerning the lesser-included offense*

Lee also claims that Judge Rhoades should have considered convicting her of a lesser-included offense under AMC 10.40.050, the section of the municipal code pertaining to the licensing and regulating of adult-oriented service establishments. Lee argues that AMC 10.40.050 makes it a violation to negligently supervise the staff of an adult-oriented service establishment. In both trials, she proposed a lesser-included offense that included the following elements: Lee with negligence failed to supervise the conduct of an employee of the escort service and the employee had committed an act, or had agreed to engage in an act, of prostitution at Fantasy Club.

■ Judge Rhoades rejected this lesser-included offense in both trials. She found,

among other things, that AMC 10.40.050 had no real relationship to criminalizing maintaining a place of prostitution. We agree with Judge Rhoades. The only section of AMC 10.40.050 that prohibits sexual activity—AMC 10.40.050(J)(1)(c)—does not apply to escort services. Rather, this section applies only to adult-orientated establishments that provide any "booth, room or cubicle for the private viewing of any adult entertainment." [17] Escort services, as defined in the ordinance, do not provide this type of service. Instead, an escort service is "a person or business that furnishes, offers to furnish or advertises to furnish escorts for a fee, tip or other consideration[.]" [18] Additionally, AMC 10.40.050 does not apply in Lee's case because it does not prohibit or otherwise regulate prostitution. Accordingly, we conclude that Judge Rhoades properly rejected Lee's requested lesser-included offense.

*Conclusion*

We AFFIRM the district court's rejection of Lee's requested lesser-included offense. However, we REMAND this case for Judge Rhoades to reconsider the verdict for maintaining a place of prostitution in light of our decision that the ordinance has two mental states, knowing and intentional. If necessary, Judge Rhoades shall also reconsider Lee's conviction for violating release conditions. We retain jurisdiction.

The district court shall make its findings and forward them to this court within 60 days of our remand. If Lee is acquitted, we will close this appeal. If Lee is again convicted, then the parties shall file supplemental memoranda addressing the district court's findings. Lee shall file her memorandum 15 days after the district court forwards its findings to this court. The Municipality shall file its memorandum 15 days after Lee files hers. Lee may not file a reply. The page limits of Appellate Rule 217 shall apply.

**15.** *State v. ABC Towing,* 954 P.2d 575, 579 (Alaska App.1998).

**16.** *See, e.g., Colgan v. State,* 711 P.2d 533, 536 (Alaska App.1985).

**17.** AMC 10.40.050(J)(1).

**18.** AMC 10.40.050(A).